**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION**

KEITH DAWSON,

    Plaintiff,                                                            Case No. 1:10-12655

v.                                                                   Hon. Thomas L. Ludington

RENT-A-CENTER, INC.

    Defendant.
_____/

**ORDER CANCELING HEARING, DENYING
DEFENDANT'S MOTION TO COMPEL ARBITRATION, AND DENYING
DEFENDANT'S MOTION TO DISMISS**

On June 3, 2010, Plaintiff commenced an action in the Circuit Court of Saginaw County, filing a complaint alleging wrongful discharge because of his race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.; 42 U.S.C. §§ 1981 and 1988; and Michigan's Elliot-Larsen Civil Rights Acts, M.C.L. § 37.2101 et seq. Plaintiff's claims arise from a series of events which led to termination of his employment. Plaintiff contends that he was ill and took leave under FMLA which was used as a pretext for his subsequent firing because of his race; he is of African American heritage. On July 2, 2010, Defendant Rent-A-Center ("RAC") removed Plaintiff's complaint to this Court on the basis of federal question and diversity jurisdiction.

Now before the Court is Defendant's motion to compel arbitration and to dismiss in lieu of an answer [Dkt. #4], filed on July 23, 2010. Plaintiff filed a response [Dkt. #6] on August 12, 2010. Defendant did not file a timely reply.

Defendant's immediate motion alleges that Plaintiff's employer at the time of his termination was an affiliate of RAC that had acquired Plaintiff's previous employer, Rent-Way, Inc. ("Rent-Way"), through a merger transaction and that Defendant's affiliate is entitled to enforce an

arbitration program called "Solutions." Rent-Way implemented the Solutions program before the merger transaction. RAC contends that because the arbitration program is enforceable by Plaintiff as well as RAC and its affiliate that the Court should dismiss the pending action pursuant to Federal Rule of Civil Procedure 12(b)(6) or 56(c) and permit Plaintiff to initiate a Solutions arbitration proceeding if he wishes. Plaintiff argues that when RAC acquired Rent-Way they established themselves as Plaintiff's new employer on their own terms of employment which did not include the Solutions program. Plaintiff acknowledges that if the Rent-Way Solutions program was applicable to his employment with RAC his claims would be encompassed within the scope of the arbitration agreement.

The Court has reviewed the parties' submissions and finds that the facts and the law have been sufficiently set forth in the motion papers. The Court concludes that oral argument will not aid in the disposition of the motion. Accordingly, it is **ORDERED** that the motion be decided on the papers submitted. E.D. Mich. LR 7.1(e)(2). For the reasons stated below, the Court will **DENY** Defendant's motion to compel arbitration and to dismiss in lieu of an answer.

**I**

**A**

Plaintiff was hired as a delivery driver in 2001 by Rent-Way, and Defendant contends Plaintiff continued his employment with RAC after it acquired Rent-Way and became his employer on November 15, 2006. Plaintiff worked in a variety of positions with RAC including as a delivery driver, an account manager, and an assistant manager. Plaintiff was promoted in early January of 2006 to store manager of the RAC store in Midland.

**B**

As a store manager, Plaintiff reported to a district manager, Mike Davis. Plaintiff alleges that Davis was known to make derogatory comments about African American employees, about Plaintiff specifically because he was African American, and about the store Plaintiff managed, including statements during Plaintiff's performance audit in 2009. Plaintiff alleges that Davis failed to provide the necessary training for Plaintiff to be considered for a promotion in June 2009 and threatened Plaintiff's position of employment, which he did not do with white employees. Plaintiff alleges that Davis' conduct prevented Plaintiff from obtaining transfer opportunities.

Plaintiff became ill with bronchitis and pink eye and sought treatment for these conditions on July 8, 2009. He was advised by the physician that he required medication and should not return to work until July 10, 2009. Plaintiff alleges that Davis directed Plaintiff to report to work the next day despite requesting leave. Davis further advised Plaintiff that he could be terminated if he did not report to work because of Plaintiff's pre-arranged vacation for the following week. After reporting to work on July 8, 2009, Plaintiff began vomiting. Plaintiff contacted Davis and again requested that he be permitted to take the medical leave directed by his physician. Plaintiff was directed to work the following day, July 10, 2009. Plaintiff reported to work as directed on July 10 and again on July 11, 2009 but developed significant chest pain while at work. Plaintiff advised his employees that he was leaving on his lunch break to have the chest pain evaluated at Covenant Hospital.

Plaintiff was then admitted to the Cardiac Care Unit at Covenant Hospital because of the severity of his medical situation. While in the emergency room at Covenant Hospital, Plaintiff contacted his assistant manager to tell him that he would not be returning to the store because he was

being admitted to the hospital. The assistant manager allegedly advised that he could handle the store and would tell Davis about Plaintiff's hospitalization. Plaintiff was not scheduled to work on July 12, 2009 and remained hospitalized in the cardiac unit. He underwent surgery related to his condition on July 13, 2009. Plaintiff spoke with the assistant manager on the evening of July 13, 2009 and the assistant manager allegedly assured Plaintiff that Davis was aware of Plaintiff's hospitalization. Plaintiff's scheduled vacation commenced on July 14, 2009 while Plaintiff was hospitalized. Plaintiff was scheduled to return to work after his vacation on July 20, 2009.

Plaintiff was discharged from the hospital on July 14, 2009 and he contacted Davis to advise him that the doctor wanted Plaintiff to remain off work through July 21, 2009. Plaintiff delivered the hospital paperwork and the off-work slip to his district manager's office on July 14, 2009 and spoke with another district manager about these documents while he was at the office. While recuperating, Plaintiff kept in contact with his assistant manager to check on the store. Plaintiff again contacted Davis on July 18, 2009 and left a voice message and a text but did not receive a response that day. Plaintiff reported to work on July 20, 2009, at the conclusion of his scheduled vacation despite his physician advising to remain off work until July 21, 2009. Upon returning to work, Plaintiff spoke with Davis who requested to review his original medical documents which Plaintiff had brought into work that day. Plaintiff took the records to Davis' office, and Davis told Plaintiff he did not hear from Plaintiff's assistant manager regarding Plaintiff's hospitalization until July 13, 2009. Davis advised Plaintiff that he was being placed on disciplinary leave. Plaintiff was subsequently fired on July 21, 2009, effective on July 22, 2009 for a "no-call, no-show." Plaintiff alleges that he had not violated Defendant's call-in policy and completed the paperwork for protected leave under FMLA, providing the necessary documents to the Defendant in July 2009.

Plaintiff seeks economic, compensatory, and punitive and/or exemplary damages as well as interest, costs and reasonable attorneys fees. He also seeks equitable relief of an order directing Defendant to rehire Plaintiff to the position he would have held had Defendant not discriminated against Plaintiff, including all associated pay, wage increases, and all benefits retroactive to the date of Plaintiff's last day of work in July 2009, an injunction prohibiting any further acts of discrimination and any other appropriate relief.

C

In September 2005, Rent-Way announced a new arbitration policy called "Solutions" to its employees. At that time, Plaintiff held the position of assistant store manager with Rent-Way. Solutions is a comprehensive alternative dispute resolution and arbitration program between Rent-Way and its employees, including Plaintiff. Under the arbitration agreement, employees agree to submit various claims, including claims for discrimination and retaliation, to binding arbitration in lieu of litigating such claims. At the time the arbitration agreement was established, Rent-Way took different steps to ensure that its employees were notified of the agreement. These steps included: sending a letter to each employee's house and advising employees that the effective date of the policy would be October 1, 2005; sending a memorandum to every Rent-Way store manager, including Plaintiff, enclosing a copy of the agreement; advising the store managers to confirm that every employee received a copy of the agreement in the mail and to provide copies of the program to those who did not receive a copy; and starting October 1, 2005, making the arbitration agreement and its human resources notice available to all employees via the intranet system. The Solutions arbitration agreement states that beginning October 1, 2005, applying for employment, accepting or continuing employment, or accepting any promotion, pay increase, transfer, bonus, or other

benefit of employment would indicate consent and agreement to resolve work-related disputes exclusively through Solutions. Rent-Way is defined in Solution's overview as including "Rent-Way, Inc., its present and future parents, subsidiaries, affiliates, successors and assigns, and their directors and executive officers. It also includes any employee benefit plans and their sponsors, fiduciaries, administrators and affiliates."

## D

RAC contends in its brief that it "acquired Rent-Way in November of 2006." (Def.'s Mot. to Compel Arbitration 3.) RAC also attaches the Declaration of Steven A. Spratt, the Senior Director of Benefits and Compensation to its brief as Exhibit 1 which provides without further explanation that "Rent-Way became a subsidiary of Rent-A-Center East, Inc., which is a subsidiary of Rent-A-Center, Inc." (*id*. at Ex. 1 ¶ 9) and that because of the merger, Plaintiff "became an employee of Rent-A-Center, East, Inc." (*Id*.) Mr. Spratt continues by explaining that RAC "assumed the Solutions arbitration agreement and expects to be bound by it under the same terms as Rent-Way." (*Id*. at Ex. 1 ¶ 14.) RAC also contends that during and after the merger, there was a continuity of business operations with RAC retaining Rent-Way's workforce, the stores providing the same rent-to-own services and each employee continuing with the same job duties.

However, Plaintiff claims that RAC made clear that it was his new employer by providing new employee manuals and employee policies. Indeed, the RAC Employee Handbook's purpose states that it provides *all* the important information for a successful career with RAC. (Pl.'s Resp. to Def.'s Mot. to Compel Arbitration Ex. C at 3 (emphasis added).) The RAC Employee Handbook makes no references to Rent-Way's policies or the Solutions arbitration agreement. Additionally, when RAC acquired Rent-Way, RAC removed Rent-Way's computer system and installed new

computer programs, and the advertising, pricing and promotions were changed. Defendant also identified a new HR representative and introduced its Employee Handbook and online policy program, Racinet, that makes no reference to the Solutions program. The Solutions arbitration program does not appear to be included in any of the RAC materials.

## II

Dismissal pursuant to the Federal Rules of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted," or summary judgment under Federal Rule of Civil Procedure 56(c) is warranted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Moore v. Ferrellgas, Inc.*, 533 F. Supp. 2d 740, 744-45 (W.D. Mich. 2008) (citations omitted) (confirming that a motion to enforce an arbitration agreement is properly brought under either Rule 12(b)(6) or Rule 56).

Under Rule 56(c), a court must review "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," to conclude that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The Court must view the evidence and draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). A fact is "material" if its resolution affects the outcome of the case. *Lenning v. Commercial Union Ins. Co.*, 260 F.3d 574, 581 (6th Cir. 2001). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving

party," there is no genuine issue of material fact. *Mich. Paytel Joint Venture v. City of Detroit*, 287 F.3d 527, 534 (6th Cir. 2002).

The party bringing the summary judgment motion has the initial burden of informing the court of the basis for its motion and identifying portions of the record which demonstrate the absence of a genuine dispute over material facts. *Mt. Lebanon Pers. Care Home, Inc. v. Hoover Universal, Inc.*, 276 F.3d 845, 848 (6th Cir. 2002). The party opposing the motion then may not "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). A party opposing a motion for summary judgment must designate specific facts in affidavits, depositions, or other factual material showing "evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. The party who bears the burden of proof must present a jury question as to each element of the claim, *Davis v. McCourt*, 226 F.3d 506, 511 (6th Cir. 2000), rather than raise only "metaphysical doubt as to the material facts." *Highland Capital, Inc. v. Franklin Nat'l Bank*, 350 F.3d 558, 564 (6th Cir. 2003) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Failure to prove an essential element of a claim renders all other facts immaterial for summary judgment purposes. *Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 895 (6th Cir. 1991).

### III

The FAA requires a federal court to stay an action when an issue between the parties to the proceeding is referable to arbitration, *see* 9 U.S.C. § 3, and to compel arbitration when one party of two parties to an arbitration agreement fails or refuses to comply with the provisions of an

enforceable arbitration agreement. *See* 9 U.S.C. § 4; *Highlands Wellmont Health Network, Inc. v. John Deere Health Plan, Inc.*, 350 F.3d 568, 573 (6th Cir. 2003) (observing that "any doubts regarding arbitrability must be resolved in favor of arbitration"). The United States Supreme Court has found that these provisions "manifest a 'liberal federal policy favoring arbitration agreements.'" *EEOC v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002); *see also Fazio v. Lehman Bros., Inc.*, 340 F.3d 386, 392 (6th Cir. 2003) (noting that there is "a well-established rule that any doubts regarding arbitrability should be resolved in favor of arbitration"). "Because arbitration agreements are fundamentally contracts, [federal courts] review the enforceability of an arbitration agreement according to the applicable state law of contract formation." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007). State contract law governs "provided the contract law applied is general and not specific to arbitration clauses." *Fazio*, 340 F.3d at 393. This is because the FAA preempts "state laws applicable *only* to arbitration provisions." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996) (emphasis in original) (explaining that "Congress precluded States from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed upon the same footing as other contracts").

Under Michigan law, the elements of a valid contract are (1) parties competent to enter into a contract; (2) a proper subject matter; (3) legal consideration; (4) mutuality of agreement; and (5) mutuality of obligation. *Thomas v. Leja*, 468 N.W.2d 58, 60 (Mich. Ct. App. 1991). "In order to form a valid contract, there must be a meeting of the minds on all the material facts." *Kamalnath v. Mercy Mem'l Hosp. Corp.*, 487 N.W.2d 499, 503 (Mich. Ct. App. 1992). "'Meeting of the minds' is a figure of speech for mutual assent." *Id.* at 503. "A contract is made when both parties have executed or accepted it, and not before." *Id.* The party seeking to enforce the contract has the

burden to show the existence of the contract. *Id.* Notably, the absence of a signature is not necessarily fatal to a finding of an agreement. Michigan law permits an inference that an offeree accepted the terms of the agreement when assent is signaled through conduct. *Pakideh v. Franklin Commercial Mortg. Group, Inc.*, 540 N.W.2d 777, 780 (Mich. Ct. App. 1995) ("If an offer does not require a specific form of acceptance, acceptance may be implied by the offeree's conduct.") (internal citation omitted); *see also Seawright*, 507 F.3d at 978 (finding that "arbitration agreements under the FAA need to be written, but not necessarily *signed*") (emphasis in original).

The Sixth Circuit has provided four threshold determinations for courts to consider when addressing a motion to compel arbitration under the FAA:

> First, [the court] must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 451 (6th Cir. 2005). Michigan courts routinely enforce arbitration clauses contained in employment agreements. *Ryoti v. Paine, Webber, Jackson & Curtis*, 142 Mich. App. 805, 813 (Ct. App. 1985). In addition, "employers are also free to require arbitration of claims as a condition of employment . . . ." *Rembert v. Ryan's Family Steak Houses, Inc.*, 235 Mich. App. 118, 124 (Ct. App. 1999). Defendant argues that in the instant case, Plaintiff agreed to submit to arbitration employment-related claims between himself, Rent-Way, and its employees by virtue of his continued employment with Rent-Way and Defendant for over four years after the Solutions program was established. Defendant further argues that Plaintiff's continued employment after the Rent-Way merger and Plaintiff's transition of employment to RAC constitutes valid assent to a post-hire arbitration agreement despite the fact that Plaintiff did not sign the

agreement. *Hergenreder v. Bickford Senior Living Grp. LLC*, No. 09-13347, 2010 U.S. Dist. LEXIS 24130, at *9 (E.D. Mich. March 16, 2010); *Raasch v. NCR Corp.*, 254 F. Supp. 2d 847 (S.D. Ohio 2003) (confirming that continued employment is sufficient to support assent to an arbitration agreement).

Defendant contends in its motion that Solutions has previously been enforced by a Michigan federal district court in *Kettles v. Rent-Way, Inc.*, No. 09-230, 2009 U.S. Dist. LEXIS 42921 (W.D. Mich. May 18, 2009). In *Kettles*, the plaintiff, who worked for Rent-Way and then RAC after it acquired Rent-Way, received the same Solutions agreement Dawson received in the instant case which he accepted through his continued employment. *Kettles*, 2009 U.S. Dist. LEXIS 42921, at *7-8. Kettles was later injured, underwent surgery, and took FMLA leave. *Id.* at *9-10. Upon returning to work, his supervisor allegedly made derogatory statements regarding his age. *Id.* at *10. About a year later in January 2008, Kettles injured his back at work and notified his supervisor of the injury. *Id.* at *11. Kettles was then fired two weeks later, allegedly because of violation of company policy regarding merchandise. *Id.* Kettles alleged that other younger employees had violated the same policy without being fired, and Kettles was subsequently replaced by a younger man. *Id.* Kettles alleged that the arbitration agreement with Rent-Way was unenforceable because he did not sign it, it was issued years after he was hired, and like his employee manual, was subject to unilateral modification by the employer. *Id.* at *14-15. In rejecting these arguments, the court found that the Solutions program was a valid arbitration contract "evincing an intent to bind both parties as well as to all 'workplace disputes' . . . ." *Id.* at *29-30.

In next addressing the plaintiff's argument that RAC was not a successor to the Rent-Way Solutions program, the *Kettles* court explained successor liability between predecessor and successor

corporations in Michigan as follows:

> the traditional rule of successor liability examines the nature of the transaction between predecessor and successor corporations. If the acquisition is accomplished by merger, with shares of stock serving as consideration, the successor generally assumes all of its predecessor's liabilities. However, where the purchase is accomplished by an exchange of cash for assets, the successor is not liable for its predecessor's liabilities unless one of five narrow exceptions applies. The exceptions are as follows: (1) where there is an express or implied assumption of liability; (2) where the transaction amounts to a consolidation or merger; (3) where the transaction was fraudulent; (4) where some of the elements of a purchase in good faith were lacking, or where the transfer was without consideration and the creditors of the transferor were not provided for; or (5) where the transferee corporation was a mere continuation or reincarnation of the old corporation.

*Id.* at *32 (citing *RDM Holdings Ltd. v. Cont'l Plastics Co.*, 281 Mich. App. 678, 717 (Ct. App. 2008)). The court concluded that RAC was the "successor-in-interest to Rent-Way, Inc., and is entitled to the benefits of, and bound by the obligations accruing to the former under the Solutions document." *Id.* at *35-36.

*Kettles*, however, presented a decidedly different initial question than that posed in this case. In *Kettles*, the plaintiff commenced his case against the corporation that was his employer, Rent-Way, who initiated the Solutions program before the merger transaction with RAC. Here, Plaintiff has brought suit against RAC, the successor shareholder/owner of Rent-Way after the merger transaction. The *Kettles* court concluded that the case could be commenced against the predecessor employer and then went on to discuss whether there was a sufficient continuity of enterprise between Rent-Way as the plaintiff's predecessor employer and RAC, the successor, to enforce the arbitration provision. That is, the court considered whether there was a sufficient continuity of the enterprise to justify holding RAC to Rent-Way's obligations and benefits considering the following factors:

(1) whether there is continuation of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations of the predecessor corporation; (2) whether the predecessor corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible; and (3) whether the purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the selling corporation. *Id.* at *33.

A further principle relevant to determining successor liability is whether the purchasing corporation publicly describes it to be the continuation of the seller corporation. *Id.* Kettles, in responding to this second inquiry, did not contest that RAC acquired Rent-Way by merger and that post-merger there was a continuity of business operations at that location. *Id.* at *34. Indeed, RAC explained in *Kettles* that RAC kept all of Rent-Way's workforce, each employee continued with the same duties, all management level employees stayed in the positions, and the store continued with the same purpose. *Id.*

In the instant case, Plaintiff, in contrast to *Kettles*, contests that there was a continuity of business at his location, and provides compelling evidence demonstrating that there was not, in fact, a continuity of business. As noted above, the pricing, promotions, and advertising were all changed, as well as the computer programs. Plaintiff was given a new HR representative and given a new employee handbook and online policies through Racinet which made clear that RAC was his new employer. Most importantly, there is no mention of Rent-Way or the Solutions agreement in any of the newly-issued employment documents. RAC, as the parent corporation of the mergent Rent-Way, Inc., entity has not demonstrated, as a matter of law, that it adopted and continued the Solutions arbitration program when it acquired Plaintiff's previous employer.

**IV**

Accordingly, it is **ORDERED** that the hearing scheduled for September 21, 2010, is **CANCELED**.

It is further **ORDERED** that Defendant's motion to compel arbitration and to dismiss [Dkt. # 4] is **DENIED**.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: December 2, 2010

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 2, 2010.

s/Tracy A. Jacobs
TRACY A. JACOBS